UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| ROBERT JOSEPH ATKINS, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 3:21-CV-075-KAC-DCP |
| | ) | | |
| SHERIFF TOM SPANGLER, CAPTAIN | ) | | |
| A. TURNER, HOCKER, S. WILLIAMS, | ) | | |
| M. WILLIAMS, SGT. T. OLDHAM, and | ) | | |
| PBA CEO JAYNE BURRITT, | ) | | |
| | ) | | |
| Defendants. | ) | | |

**<u>MEMORANDUM & ORDER</u>**

Plaintiff, a prisoner of the Knox County Sheriff's Office at the Knox County Detention Facility, has filed a pro se Complaint alleging civil rights violations [Doc. 1], an Amended Complaint [Doc. 11],[1] and two motions for leave to proceed *in forma pauperis* [Doc. 3; Doc. 12]. Construing his Amended Complaint liberally, as required by *Haines v. Kerner*, 404 U.S. 519, 520 (1972) and *Johnson v. City of Shelby*, 574 U.S. 10 (2014), it appears that he intends to assert claims under 42 U.S.C. § 1983 for a violation of the Fifth Amendment's Self-Incrimination Clause and

---

[1] Plaintiff's initial Complaint contained allegations against two separate individuals named "C/O Williams" or "Officer Williams" [Doc. 1, 1]. But the Court's docket sheet originally listed only one defendant named "Williams." On June 21, 2021, Plaintiff filed a letter noting the omission of the second "Williams" and additionally requesting to change the named Defendants [Doc. 13]. On July 8, 2021, Plaintiff filed a form Section 1983 complaint which he labeled as his "original civil complaint" [Doc. 11-1]. Despite its styling, the document filed on July 8, 2021 changed some of the Defendants in this action [*Compare* Doc. 1 *with* Doc. 11]. Accordingly, the Court construes Plaintiff's filing on July 8, 2021 as a request for leave to amend his Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. Plaintiff's request to amend the Complaint is **GRANTED** to the extent that the Court will now screen the July 8, 2021, Amended Complaint to determine whether it states a claim upon which relief may be granted under Section 1983, as it "'supersedes [the] earlier complaint for all purposes.'" *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quoting *In re Refrigerant Compressors Antitrust Litigation,* 731 F.3d 586, 589 (6th Cir. 2013)).

excessive force in violation of the Fourteenth Amendment's Due Process Clause. For the reasons set forth below, Plaintiff's operative motion for leave to proceed *in forma pauperis* [Doc. 12] will be **GRANTED**, and this action will proceed only as to Plaintiff's excessive force claim against the Defendants S. Williams, M. Williams and Hocker.

**I.    FILING FEE**

Plaintiff's recent motion for leave to proceed *in forma pauperis* and certified inmate trust account demonstrate that he lacks sufficient financial resources to pay the filing fee [Doc. 12]. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 12] is **GRANTED**. Plaintiff's initial motion for leave to proceed *in forma pauperis* [Doc. 3] is **DENIED AS MOOT**.

Because Plaintiff is a Knox County inmate, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Knoxville, Tennessee 37902, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General of the State of Tennessee, and the Court's financial deputy.

This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "leniency granted to pro se petitioners . . . is not boundless." *Martin v. Overton*, 391 F.3d 710 (6th Cir. 2004). "Liberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 589 (6th Cir. 2001). Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570.

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983; *Braley v. City of*

3

*Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

## III. ALLEGATIONS

Plaintiff asserts that his Fifth Amendment rights were violated while he was housed at the Knox County Detention Facility on February 10, 2021 [Doc. 11]. Corrections staff allegedly forced Plaintiff to falsely confess to a murder while awaiting trial for a separate crime [*Id.* at 4]. Plaintiff claims to have been forced to speak with detectives by Officers S. Williams, M. Williams and Hocker [*Id.*]. Plaintiff informed corrections officers that he did not want to talk to detectives, at which point the Defendants S. Williams, M. Williams, and Hocker assertedly "maced and tazed" him [*Id.*]. Allegedly, Plaintiff then involuntarily confessed out of fear, and, as a result, he was indicted for second-degree murder [*Id.*]. Defendants Cpt. Turner and Sgt. Oldham allegedly knew that Plaintiff did not want to talk to detectives but did not try to stop the corrections officers from violating his Fifth Amendment rights [*Id.*]. According to Plaintiff, Defendant Tom Spangler supervises the corrections officers at issue, and Defendant Jayne Burritt is "CEO of PBA," which Plaintiff states owns the Knox County Jail in the Knox County Building [*Id.*]. Plaintiff now sues CEO Burritt, Sheriff Spangler, Captain Turner, Sergeant Oldham, Officers Hocker, S. Williams, and M. Williams [*Id.* at 1, 3]. Plaintiff requests that the Court dismiss the officers involved from "police or correctional officer duties" and award compensation for "pain, stress, and life" [*Id.* at 5].

## IV. ANALYSIS

To the extent Plaintiff challenges his pending state charge for second-degree murder, Plaintiff's Fifth Amendment claim is not cognizable under Section 1983 pursuant to the abstention

4

doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).[2]  Specifically, in *Younger*, the Supreme Court held that, absent extraordinary circumstances, federal equity jurisdiction may not be used to enjoin pending state prosecutions as states have a special interest in enforcing their own laws in their own courts.  *Id.* at 44.  The rule is "designed to permit state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court."  *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986) (internal quotations omitted).  As such, federal courts should abstain from addressing a claim arising from a state prosecution where: (1) a state proceeding is ongoing; (2) an important state interest is involved; and (3) the party has an adequate opportunity to raise constitutional challenges in the state proceeding.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, (1982); *Fieger v. Thomas*, 74 F.3d 740, 744 (6th Cir. 1996).  State criminal proceedings involve important state interests.  *See, e.g., Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000).  Accordingly, *Younger* governs Plaintiff's challenge to his second-degree murder charge as this charge is pending, the criminal matter involves important state interests, and Plaintiff may raise his claim that his confession violated his Fifth Amendment rights in that pending criminal matter.

While *Younger* dictates that the Court must abstain from interfering in Plaintiff's criminal, state court proceeding and deciding his request for equitable relief, Plaintiff also seeks monetary damages for the alleged Fifth Amendment violation.  Ordinarily, a district court should stay a case instead of instead of dismissing it when the complaint seeks both equitable relief and monetary damages.  *James v. Hampton*, 513 F. App'x 471, 477 (6th Cir. 2013); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998).  However, when a claim is not yet ripe,

---

[2] Plaintiff's initial Complaint expressly sought the dismissal of his pending charge for second-degree murder [Doc. 1, 2].  While his Amended Complaint does not expressly seek that relief, the Court, reading his Amended Complaint liberally, construes it to request the dismissal of his pending second-degree murder charge.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

5

"*Younger* abstention permits dismissal and does not require holding in abeyance." *James*, 513 F. App'x at 477; *see also Coles v. Granville*, 448 F.3d 853, 866 (6th Cir. 2006). Here, Plaintiff's Fifth Amendment claim has not yet accrued.

A violation of the Self-Incrimination Clause does not arise until a coerced statement is used in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 766-73 (2003) (plurality opinion) (rejecting Plaintiff's Section 1983 claims asserting Fifth Amendment violations where his statements were never used in a criminal proceeding); *see also McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005) ("[I]t is now clear that 'mere coercion does not violate the . . . Self-Incrimination Clause absent use of the compelled statements in a criminal case.'") (citing *Chavez*, 538 U.S. at 769). While the Supreme Court in *Chavez* declined to decide when a criminal case begins for the purposes of the Fifth Amendment, the Sixth Circuit has repeatedly noted that "the thrust of the opinion rests on the view that the Fifth Amendment is a trial protection." *Haddad v. Gregg*, 910 F.3d 237, 253 (6th Cir. 2018) (citing *McKinley*, 404 F.3d at 430 n.11); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants . . . a constitutional violation occurs only at trial."). Accordingly, as Plaintiff has not asserted that his incriminating statements have been used in a criminal trial, Plaintiff has not sufficiently pled that he "suffered the requisite constitutional injury for purposes of a § 1983 action." *McKinley*, 404 F.3d at 430; *see also Lingler v. Fechko*, 312 F.3d 237, 238-40 (6th Cir. 2002) (finding no Fifth Amendment violation sufficient to sustain a Section 1983 action where police officer-employees who had made incriminating statements in compulsory interviews with superiors were never prosecuted). Thus, Plaintiff's Fifth Amendment claim will be **DISMISSED**.

While Plaintiff's Fifth Amendment claim is not actionable, Plaintiff may nonetheless assert a violation of the Fourteenth Amendment's Due Process Clause. *Chavez*, 538 U.S. at 773 (stating that the Fourteenth Amendment's Due Process Clause governs cases of abuse resulting in confessions that are not used at trial); *see also Gonzalez v. Entress*, 133 F.3d 551 (7th Cir. 1998) ("Application of excessive force at a police station violates the Constitution and is immediately actionable, even if the prosecutor never tries to use the confession at trial."). Plaintiff alleges that, after he stated that he did not want to speak to detectives, Defendants S. Williams, M. Williams, and Hocker "maced and tazed" him [Doc. 11, 4]. For purposes of screening Plaintiff's Amended Complaint, the Court assumes that he was a pretrial detainee at the time of this incident. Thus, the relevant inquiry is whether these acts of force "were objectively unreasonable," and therefore violated Plaintiff's Fourteenth Amendment right to due process. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 2475 (2015). As Plaintiff alleges that these acts of force resulted only from him saying that he did not want to speak to detectives, the Court can plausibly infer that they were objectively unreasonable. Thus, this excessive force claim will proceed against the Defendants S. Williams, M. Williams, and Hocker.[3]

---

[3] The Court notes that a disciplinary report attached to the initial Complaint indicates that Plaintiff was found guilty of a disciplinary infraction for resisting officer control based on the February 10, 2021 incident underlying this claim because the officers' body camera footage established that Plaintiff took "a fighting stance by blading his body and turning toward officers" [Doc. 1, 7]. This report also indicates that, as a result of this disciplinary conviction, Plaintiff received a thirty-day sentence and the disciplinary board recommended that jail officials take eight behavior credits from Plaintiff [*Id.*]. If jail officials took these behavior credits from Plaintiff pursuant to this recommendation, Plaintiff's excessive force claim against is not cognizable under Section 1983 absent proof that this disciplinary conviction has been invalidated. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding that a prisoner cannot use Section 1983 to challenge prison procedures employed to deprive him of good-time credits when the procedural defect alleged "would, if established, necessarily imply the invalidity of the punishment imposed"). Nevertheless, as the disciplinary report does not conclusively show that jail officials took behavior credits from Plaintiff due to this disciplinary conviction and the Court must accept Plaintiff's allegations in his complaint as true at screening, this claim will proceed at this time.

However, Plaintiff has not set forth any allegations against Defendants Sheriff Spangler, Captain Turner, Sergeant Oldham, and CEO Burritt from which the Court can plausibly infer that these Defendants were personally involved in the alleged excessive force incident on February 10, 2021. As such, the Complaint fails to state a claim upon which relief may be granted under Section 1983 as to these Defendants, and they will be **DISMISSED**. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under Section 1983); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (providing that Section 1983 liability cannot be premised upon a theory of respondeat superior); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under Section 1983).

V.   **CONCLUSION**

For the reasons set forth above:

1. The Clerk is **DIRECTED** to correct the Court's docket sheet to reflect that C/O Vazquez is not a defendant in the Amended Complaint;

2. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 12] is **GRANTED**; Plaintiff's initial motion for leave to proceed *in forma pauperis* [Doc. 3] is **DENIED AS MOOT**.

3. Plaintiff is **ASSESSED** t§he civil filing fee of $350.00;

4. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

5. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

6. Even liberally construing the Complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under Setion 1983 as to CEO Burritt, Sheriff

Spangler, Captain Turner, and Sergeant Oldham. Accordingly, Defendants CEO Burritt, Sheriff Spangler, Captain Turner, and Sergeant Oldham are **DISMISSED**;

7. Even liberally construing the Complaint in favor of Plaintiff, it fails to state a claim under the Fifth Amendment's Self-Incrimination Clause, and Plaintiff's request for dismissal of his second-degree murder charge is not cognizable under Section 1983. Accordingly, Plaintiff's Fifth Amendment claim and request for dismissal of his second-degree murder charge are **DISMISSED**;

8. Plaintiff's claim against the Defendants S. Williams, M. Williams, and Hocker alleging excessive force in violation of the Fourteenth Amendment's Due Process Clause will proceed herein;

9. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for each remaining Defendant;

10. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of entry of this order;

11. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

12. Service on Defendants shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

13. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action may be dismissed;

14. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him; and

15. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to

provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER :**

                                              s/ Katherine A. Crytzer
                                              KATHERINE A. CRYTZER
                                              United States District Judge